■ In the Matter of KATHY A. CALHOUN, Petitioner, v NEW YORK STATE AND LOCAL EMPLOYEES' RETIREMENT SYSTEM et al., Respondents. [977 NYS2d 474]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Comptroller which, among other things, denied petitioner's application for performance of duty disability retirement benefits.

---

4. Defendant was five feet, six inches tall and 63 years old in April 2008.

In June 2004, petitioner, a former correction officer at Sing Sing Correctional Facility in Westchester County, applied for disability retirement benefits and performance of duty disability retirement benefits contending that she was permanently disabled as the result of injuries sustained in February 1999, May 1999, November 1999 and February 2001. Following the denial of her applications, petitioner sought a hearing and redetermination. For purposes of petitioner's application for performance of duty disability retirement benefits, respondent New York State and Local Employees' Retirement System conceded that the November 1999 incident was the act of an inmate and, further, that petitioner was permanently disabled from the performance of her duties (*see* Retirement and Social Security Law § 507-b [a]). At the conclusion of the hearing, the Hearing Officer denied petitioner's application for disability retirement benefits, finding that none of the cited incidents constituted accidents within the meaning of the Retirement and Social Security Law. The Hearing Officer also denied petitioner's application for performance of duty disability retirement benefits, finding that the February 1999, May 1999 and February 2001 incidents were not the acts of an inmate and, further, that petitioner failed to establish that her disabling spinal condition was either caused or exacerbated by the November 1999 incident. Respondent Comptroller upheld the Hearing Officer's decision, prompting petitioner to commence this CPLR article 78 proceeding to challenge that determination.[1]

In light of the concessions made by the Retirement System at the hearing, petitioner's sole burden was to demonstrate that her current disability was the "natural and proximate result of" the November 1999 incident (Retirement and Social Security Law § 507-b [a]; *cf. Matter of Hunt v DiNapoli*, 93 AD3d 1017, 1017 [2012]; *Matter of Koziuk v New York State Comptroller*, 78 AD3d 1458, 1459 [2010]).[2] As a starting point, we note that although petitioner testified at the hearing that she injured her lower back during the November 1999 incident, the employee report completed by petitioner immediately following this incident references only an injury to her right knee. This apparent inconsistency "present[ed] a credibility issue for the factfinder to resolve" (*Matter of Stimmer v DiNapoli*, 98 AD3d 1216, 1217 [2012]; *see Matter of Koziuk v New York State*

---

1. Petitioner, as so limited by her brief, challenges only that portion of the Comptroller's determination denying her application for performance of duty disability retirement benefits based upon the November 1999 incident.

2. Both petitioner and the Retirement System elected to proceed upon documentary evidence and did not produce any expert medical testimony at the hearing.

*Comptroller*, 78 AD3d at 1460). As to the issue of causation, petitioner's treating orthopedic surgeon was of the view that petitioner's cervical and lumbar spinal injuries were causally related to the November 1999 incident and that such incident, in turn, set into motion a degenerative process that ultimately resulted in petitioner's disabling condition.[3] The orthopedic surgeon who evaluated petitioner on behalf of the Retirement System, however, opined that petitioner's disability was attributable to spinal injuries sustained as the result of the February 1999 and May 1999 incidents, and the remaining medical professionals who evaluated petitioner either did not express an opinion as to causation or attributed petitioner's disabling condition to the May 1999 incident.[4] Where, as here, the record contains conflicting medical evidence, the Comptroller is vested with the authority to "resolve [such] conflicts . . . and to credit one expert's opinion over that of another, so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (*Matter of Mulvaney v DiNapoli*, 92 AD3d 1021, 1021 [2012] [internal quotation marks and citation omitted]; *accord Matter of Ashley v DiNapoli*, 97 AD3d 1057, 1059 [2012]). As the report tendered by the Retirement System's expert provides substantial evidence to support the finding that petitioner's disability was not caused by the November 1999 incident, the Comptroller's determination in this regard will not be disturbed (*see Matter of Dunn v DiNapoli*, 96 AD3d 1223, 1224-1225 [2012]; *Matter of Steinberg v DiNapoli*, 93 AD3d 1068, 1069 [2012]; *Matter of Sedlak v DiNapoli*, 84 AD3d 1675, 1678 [2011]). Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Stein, J.P., McCarthy and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

**3.** Petitioner's treating neurosurgeon concurred with this diagnosis, but he failed to specify which of the three injuries that petitioner suffered in 1999 caused her disability.

**4.** As petitioner does not argue that either the February 1999 incident or the May 1999 incident qualifies as the act of an inmate, such testimony is of no aid to her.