■ In the Matter of ANDRE SEDLAK, Petitioner, v THOMAS P. DiNAPOLI, as Comptroller of the State of New York, Respondent. [923 NYS2d 790]—

Spain, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which denied petitioner's applications for performance of duty disability retirement benefits.

Petitioner, a correction officer, applied for performance of duty disability retirement benefits in January 2004, alleging that he was permanently disabled due to both an injury to his right knee while subduing an inmate on October 23, 2003 and to heart disease. Inasmuch as petitioner premised his application on both an injury to his knee resulting from an act of an inmate pursuant to Retirement and Social Security Law § 507-b (a) and on the heart presumption contained in Retirement and Social Security Law § 507-b (c), respondent treated the application as two separate applications for performance of duty disability retirement benefits. The applications were initially disapproved by respondent.

In July 2005, petitioner was allowed to amend his application regarding his knee to include references to two incidents where he injured his right knee at work and required surgery. The first was an incident in 1988, where he injured his right knee attempting to handcuff an inmate. The second was an incident in 2001 that did not involve an inmate, where petitioner alleged that his knee gave out, causing him to fall down some cellblock stairs. The amended application was disapproved and petitioner sought a redetermination of both applications. Following hearings, a Hearing Officer determined that the heart presumption pursuant to Retirement and Social Security Law § 507-b (c) was inapplicable due to petitioner's failure to prove that he is permanently incapacitated from performing his duties as the result of heart disease. Further, although he found that petitioner was permanently incapacitated as the result of his knee injury, the Hearing Officer determined that petitioner had failed to establish that the injury was the direct result of an act

of an inmate. Respondent accepted the Hearing Officer's determinations and denied the applications, prompting this CPLR article 78 proceeding.

We confirm. Regarding petitioner's claim of disability related to heart disease, in order to be entitled to the statutory heart presumption, there must be an "impairment of health caused by diseases of the heart, resulting in disability" (Retirement and Social Security Law § 507-b [c]; *see Matter of Marinelli v DiNapoli*, 82 AD3d 1347, 1348 [2011]). While petitioner presented the medical reports of various cardiologists, which include evidence of him undergoing heart valve replacement surgery in 1994 and an aortic aneurysm resection in April 2003, none of the cardiologists opined that petitioner was disabled as the result of an impairment of the heart and the record reflects that petitioner returned to work following these procedures. Further, Joseph Doyle, a cardiologist who examined petitioner on behalf of the New York State and Local Retirement System in June 2004, found petitioner's cardiac status to be "stable and asymptomatic." Accordingly, we conclude that respondent's determination that petitioner was not disabled from performing his duties as a correction officer due to heart disease is supported by substantial evidence (*see Matter of Bladykas v New York State & Local Employees' Retirement Sys.*, 75 AD3d 749, 751 [2010]; *Matter of Tucker v McCall*, 262 AD2d 916, 917 [1999]).

Turning to petitioner's claim pursuant to Retirement and Social Security Law § 507-b (a), petitioner must demonstrate that an act of an inmate proximately caused his disabling knee injury (*see Matter of Esposito v Hevesi*, 30 AD3d 667, 668 [2006]; *Matter of Mruczek v McCall*, 299 AD2d 638, 639 [2002]). To that end, petitioner presented evidence that he was involved in altercations with inmates in both 1988 and 2003 that resulted in injuries to his right knee. Petitioner also presented the reports of orthopedic surgeons William Kilgus, Edwin Mohler and Roy Hepner, who examined him in connection with his claims for workers' compensation benefits. Kilgus found petitioner to be partially disabled, and apportioned the disability between the 1988, 2001 and 2003 incidents. Mohler, who examined petitioner prior to the October 2003 incident, found that petitioner suffered from degenerative arthritis in the knee that was caused by the 1988 injury, and that the incident in 2001 was unrelated to this condition. Hepner, who examined petitioner in 2002, found that petitioner suffered from "severe osteoarthritis," based upon an X ray report from 2001.

In rebuttal, the Retirement System presented the report and

testimony of Mary Godesky, an orthopedic surgeon who examined petitioner on its behalf. Godesky found that petitioner was permanently disabled from his duties as the result of progressive degenerative arthritis of the right knee. Godesky, however, concluded that the cause of petitioner's disability was the 2001 incident, and not the 1988 or 2003 incidents. She noted that there were no medical records from the 1988 incident and she refuted the existence of degenerative arthritis prior to the 2001 incident, based upon the surgeon's report of the 2001 surgery. In that report, the surgeon noted an acute injury to the knee but did not indicate any evidence of a degenerative condition at that time. In light of this lack of evidence of a degenerative condition in 2001, and the evidence of the progressive degenerative changes she found in her examination and which are noted in a 2003 X ray report, Godesky opined that the onset of the degenerative changes occurred, not as a result of the 1988 and 2003 incidents, but as a result of the 2001 incident.

"It is well established that [respondent] is vested with the authority to weigh conflicting medical evidence and to credit the opinion of one expert over another" (*Matter of Rolandelli v Hevesi*, 27 AD3d 945, 946 [2006] [citations omitted]; *accord Matter of Macri v DiNapoli*, 56 AD3d 936, 937 [2008]). Inasmuch as the 2001 incident did not involve an inmate and Godesky's conclusion is rational and fact-based, respondent's determination, that petitioner failed to establish that his disability was the result of an act of an inmate, is supported by substantial evidence and we find no basis to disturb it (*see Matter of Fochi v New York State Comptroller*, 78 AD3d 1460, 1461 [2010], *lv denied* 16 NY3d 707 [2011]; *Matter of Gesner v DiNapoli*, 78 AD3d 1283, 1284 [2010]).

Mercure, J.P., Kavanagh, Stein and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.